**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

BETTY JO KIRKWOOD,

    Plaintiff,

v.

BRENNTAG NORTH AMERICA, INC., et al.,

    Defendants.

Civil Action No. 19-14947 (MAS) (LHG)

**MEMORANDUM OPINION**

## SHIPP, District Judge

This matter comes before the Court upon Defendant Cyprus Amax Minerals Company's ("CAMC") Motion to Dismiss Plaintiff Betty Jo Kirkwood's ("Plaintiff") Complaint for Lack of Personal Jurisdiction (ECF No. 21), Defendant Cyprus Mines Corporation's ("Cyprus") Motion to Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction (ECF No. 22), and Defendant Colgate-Palmolive Company's ("Colgate") Motion to Change Venue Pursuant to 28 U.S.C. § 1404 (ECF No. 27). Defendants Whittaker, Clark & Daniels, Inc. ("Whittaker"), Coty, Inc. ("Coty"), CAMC, and Cyprus (collectively with Colgate, "Defendants") joined Colgate's Motion. (ECF Nos. 28, 31, 32.) Plaintiff opposed each of the Motions. (ECF Nos. 29, 30, 40.) Replies were filed by CAMC (ECF No. 33), Cyprus (ECF No. 34), and Colgate (ECF No. 47).[1] CAMC and Cyprus further replied to Plaintiff's Opposition to Colgate's Motion (ECF No. 48).

---

[1] CAMC and Cyprus filed "supplementary" replies on their Motions to Dismiss. (ECF Nos. 45, 46.) Sur-replies may not be filed without permission of the Court. *See* L. Civ. R. 7.1(d)(6). The Court, accordingly, does not consider CAMC and Cyprus's supplementary replies.

and Whittaker and Coty joined the reply (ECF Nos. 49, 50). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, the Motions are denied.

## I. BACKGROUND

Plaintiff, an Oklahoma resident, filed this Action in the Superior Court of New Jersey on June 28, 2019. (Compl. ¶ 1, Ex. A to Notice of Removal, ECF No. 1-1.) Plaintiff alleges that she developed mesothelioma from asbestos exposure owing to her personal and regular use of Cashmere Bouquet talcum powder, Bourjois Evening in Paris talcum powder, and Johnson's Baby Powder, and her daily use of Johnson's Baby Powder on her children from approximately 1957 to 1966. (*Id.* ¶ 1.)

Plaintiff alleges that Colgate, Coty, Cyprus, CAMC, and Whittaker (collectively, "Defendants"), and others "were [the] designers, manufacturers, suppliers[,] or distributors of asbestos-containing products, . . . talc[,] and/or . . . talcum powder products . . . to which Plaintiff . . . was exposed." (*Id.* ¶ 2.) Cyprus and CAMC were "sued individually . . . and *as successor to* . . . Metropolitan Talc Co. Inc. [("Metropolitan Talc")] and Charles Mathieu Inc. [("Charles Mathieu")]." (*Id.* (emphasis added).) The Complaint alleges, *inter alia*, negligence, breach of express and implied warranties, intentional and negligent misrepresentation, strict liability, and violations of the Product Liability Act. CAMC timely removed this action on July 10, 2019. Thereafter, Defendants filed the present motions.

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004).

2

Because New Jersey's long-arm statute allows "the exercise of personal jurisdiction to the fullest limits of due process[,]" the Court "look[s] to federal law for the interpretation of the limits on in personam jurisdiction." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

To comport with due process, a forum state may exercise jurisdiction over an out-of-state corporate defendant only if the defendant has "certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Wortham v. Karstadtquelle AG (In re Nazi Era Cases)*, 153 F. App'x 819, 824 (3d Cir. 2005). To assess the sufficiency of minimum contacts for personal jurisdiction, a court focuses on the "relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 775 (1984).

Courts recognize two types of personal jurisdiction: general and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Id.* at 127 (quoting *Goodyear*, 564 U.S. at 919). Specific jurisdiction exists when "the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum.'" *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984)). That is, there must be "an affiliatio[n] between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted).

3

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish "a prima facie case of personal jurisdiction" and "establish[] jurisdictional facts through sworn affidavits or other competent evidence." *Miller Yacht Sales, Inc.*, 384 F.3d at 97, 101 n.6 (citations omitted). "[T]he plaintiff is entitled to have [her] allegations taken as true and all factual disputes drawn in [her] favor." *Id.* at 97. Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable. *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1226 (3d Cir. 1992).

### B. Motion to Transfer Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Although "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" under 28 U.S.C. § 1391(b)(2), "the power of a District Court under § 1404(a) to transfer an action to another district . . . depend[s] . . . upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960) (quoting § 1404(a)).

To determine whether an action "might have been brought" in a forum, the transferee court must have proper venue and personal jurisdiction. *Id.* (finding rule precludes transfer even upon defendant's consent to waiver of venue and personal jurisdiction defenses in transferee court). In the Third Circuit, a plaintiff must have had an "unqualified right" to commence the action in the transferee district, *e.g.*, "the transferee court must have had power to command jurisdiction over *all of the defendants*." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d

4

Cir. 1970) (emphasis added) (citations omitted). "If there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that [s]he would not have an unqualified right to bring h[er] cause in the transferee forum." *Id.*

To determine whether convenience and the interests of justice are better served by transfer to a different forum, courts consider both public and private interests. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Private interests include the plaintiff's choice of venue, the defendant's preference, where the claim arose, convenience of the witnesses, and the extent to which records or other documentary evidence would be available for production. *Id.* Public interests include the enforceability of any judgment; practical considerations that could make the trial easy, expeditious or inexpensive; relative administrative difficulty resulting from court congestion; local interest in deciding the controversy; relative importance of public policies; and familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

"It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice 'should not be lightly disturbed.'" *Shutte*, 431 F.2d. at 25 (citation omitted); *Jumara*, 55 F.3d at 879. "[T]he burden on a § 1404(a) motion must be borne by the party seeking to transfer the case . . . ." *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (internal quotation marks and citations omitted). "Specifically, the movant's burden is to show that (1) the case "might have been brought" in the district to which he asks the court to transfer it, and (2) the proposed transferee court would be a more convenient forum for the litigation." *CIBC World Markets, Inc. v. Deutsche Bank Sec., Inc.*, 309 F. Supp. 2d 637, 643 (D.N.J. 2004).

### III. DISCUSSION

#### A. Personal Jurisdiction Over CAMC and CMC

Cyprus and CAMC argue that, as Delaware corporations with principal places of business in Arizona, they are subject neither to general nor specific jurisdiction in New Jersey. (Cyprus's Moving Br. 2, ECF No. 22-1; CAMC's Moving Br. 2, ECF No. 21-1.)

Plaintiff argues that Cyprus, by acquiring New Jersey corporations Charles Mathieu and Metropolitan Talc and by continuing to supply the same product line to the same customers, became a successor to their liabilities and their jurisdictional contacts. (*E.g.*, Pl.'s Opp'n Br. to CAMC Mot. 10, 15, 18, ECF No. 29.) Plaintiff argues that CAMC further became a successor to those liabilities and contacts. (*Id.* at 14, 19.)

In support of her jurisdictional theories, Plaintiff marshaled discovery obtained in other asbestos actions to tell the history of the parties: Charles Mathieu incorporated under New Jersey state law in 1933. (*Id.* at 3.) For some time, Charles Mathieu imported talc from Italy before forming Metropolitan Talc in 1964. (*Id.* at 4.) Metropolitan Talc operated to process talc. (*Id.*) In 1979, Charles Mathieu sold to Cyprus the entirety of its property, operations, and subsidiaries, including Metropolitan Talc and the exclusive right to import Italian talc in the United States, pursuant to various asset purchase agreements. (*Id.* at 4–5.) Cyprus continued the operations of Charles Mathieu and its subsidiaries, by retaining certain Charles Mathieu employees and customers. (*Id.* at 5.) Under the terms of the agreements, Charles Mathieu dissolved, and Cyprus acquired the "whole kit and kaboodle" of Charles Mathieu's operations. (*Id.* at 5–6.) Subsequently, Cyprus continued to sell talc. (*Id.* at 6.) In 1993, Cyprus merged with Amax, Inc. to form CAMC. (*Id.*)

Cypress and CAMC argue that Plaintiff's arguments are factually unsupported. Cyprus argues that, under the terms of the 1979 agreements, it acquired some assets of Charles Mathieu's subsidiaries but none of their liabilities. (Cyprus's Reply Br. 5, ECF No. 34.) Cyprus also argues that, despite the 1979 agreements, Charles Mathieu continued to import and purchase talc from abroad for years, and that it transferred its entire talc business and most associated liabilities to Cyprus Talc Corporation in 1992. (*Id.* at 7–8.) CAMC argues that it has never mined, milled, marketed or sold talc. (CAMC's Reply Br. 1, ECF No. 33.) CAMC also argues that it could not have acquired by merger the purported product line successor liability of Cyprus—a company that continues to exist and be subject to suit as a separate and distinct entity. (*Id.* at 5.)

Cyprus and CAMC both argue that Plaintiff's product line successor jurisdiction theory is legally unsupported and does not comport with due process. They argue that, although New Jersey recognizes successor *liability*, successor *jurisdiction* is a different matter. (*Id.* at 7–8; Cyprus's Reply Br. 11.) They further argue that, where courts have recognized successor jurisdiction, those courts have required corporate sameness. (CAMC's Reply Br. 6–7; Cyprus's Reply Br. 10–11.)

"This Court recognizes that 'the jurisdictional contacts of a predecessor corporation may be imputed to its successor corporation without offending due process.'" *Am. Estates Wines, Inc. v. Kreglinger Wine Estates Pty, Ltd., et al.*, No. 07-2474, 2008 WL 819993, at *5 (D.N.J. Mar. 25, 2008) (quoting *In re Nazi Era Cases*, 153 F. App'x at 825). Successor jurisdiction is recognized in three situations: "(1) merger or de facto merger; (2) express or implied assumption of liabilities, including by a ratification of the predecessor's activities; or (3) acquisition of assets

7

or reorganization undertaken to fraudulently avoid jurisdiction." *In re Nazi Era Cases*, 153 F. App'x at 823.

While product line successor liability[2] is an exception to the general rule of successor non-liability, "no court, appears to have addressed . . . whether product line successor liability could support specific jurisdiction over a successor lacking minimum contacts to the forum after *Daimler*." *Huff v. Cyprus Amax Minerals Co.*, No. A-3655-17T3, 2019 WL 4296778, at *6 (N.J. Sup. Ct. App. Div. Sept. 11, 2019).

Here, it is unclear whether the Court has personal jurisdiction over Cypress and CAMC. "In the context of personal jurisdiction, special problems are presented when jurisdiction over a defendant is justified by a related entity's contacts with the forum . . . ." Charles Alan Wright & Arthur R. Miller, 4A Federal Practice and Procedure § 1069.4 (4th ed.). "The very nature of these often[-]difficult issues makes their resolution extremely fact dependent." *Id.* Moreover, "[t]he [C]ourt declines to pass upon the merits of [D]efendant[s'] constitutional objections at this stage of the proceedings, being mindful of the rule laid down by the Supreme Court that grave constitutional questions should not be determined on [a] motion to dismiss where 'there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer.'" *Gordon, Wolf, Cowen Co. v. Indep. Halvah & Candies*, 9 F.R.D. 700, 701 (S.D.N.Y. 1949) (quoting *Borden's Farm Prods. Co. v. Baldwin*, 293 U.S. 194, 213 (1934) (Stone and Cardozo, J., concurring)).

The present inquiry appears largely dependent on the details of the Cyprus-Amax merger, Cypress and CAMC's purported assumption of liabilities from Charles Mathieu and

---

[2] Product line successor liability exists where a "successor[] undertak[es] to manufacture essentially the same line of products as the predecessor." *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 819 (N.J. 1981).

8

Metropolitan Talc, and Cypress and CAMC's purported undertaking to manufacture essentially the same line of products as Charles Mathieu and Metropolitan Talc. Because the parties' relationships and businesses are sufficiently disputed and the history between the parties sufficiently muddied, the Court denies Cypress and CAMC's Motions to Dismiss without prejudice and grants Plaintiff leave to conduct jurisdictional discovery.[3]

### B. Motion to Transfer Venue

Defendants argue that this Action should be transferred to the Western District of Oklahoma because, as Plaintiff's state of residence and the state where Plaintiff's injuries occurred and medical treatment was rendered, Oklahoma is an appropriate and more convenient venue than New Jersey. (Colgate's Moving Br. 1–2, ECF No. 27-1.) Defendants also cite the relative docket congestion in the District of New Jersey compared to the Western District of Oklahoma. (*Id.*) Plaintiff argues that the Western District of Oklahoma is an improper venue because it does not have personal jurisdiction over all defendants. (Pl.'s Opp'n Br. to Colgate's Motion 4–7, ECF No. 40.) Plaintiff further argues that, while Oklahoma may be more convenient for discovery into Plaintiff's exposure, New Jersey is more convenient for discovery into the liability of various Defendants. (*Id.* at 10.)

Because Plaintiff alleges that she used the talc products in Oklahoma, was exposed to asbestos in Oklahoma, and was treated in Oklahoma, and because Plaintiff filed a previous suit

---

[3] "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'" *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations omitted). Here, Plaintiff has "present[ed] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,'" *id.* (citation omitted) (last alteration in the original), such that Plaintiff's claim is not "clearly frivolous." Moreover, it appears that jurisdictional discovery as to CAMC is similarly going forward in *Huff. See Huff*, 2019 WL 4296778, at *7 (remanding to trial court to address factual issues as to CAMC's successorship). For these reasons, the Court exercises its discretion to order jurisdictional discovery.

9

in the Western District of Oklahoma, the Court finds that "a substantial part of the events ... giving rise to the claim occurred" in the district to satisfy § 1391(b)(2).

But the question remains: could the Western District of Oklahoma command jurisdiction over all defendants, as is required under *Hoffman and Shutte*? Defendants do not argue that the Western District of Oklahoma would have personal jurisdiction over each of the defendants. (*See generally* Colgate's Moving Br.; Colgate's Reply Br.) Although Colgate argues the transfer of the Action would result in no jurisdictional issues (*see* Colgate's Moving Br. 5 ("[T]here is no jurisdictional bar to proceeding in the Western District of Oklahoma.")), Cypress and CAMC intend to challenge the exercise of jurisdiction by the Western District of Oklahoma. (*See* Cypress and CAMC Reply Br. to Colgate's Motion 2 ("CAMC and CMC have valid personal jurisdiction defenses in both [the District of New Jersey and the Western District of Oklahoma."), ECF No. 48.) Indeed, it appears that a couple of Oklahoma courts have previously dismissed Cypress and CAMC from other talc actions on jurisdictional grounds. (*See* Pl.'s Opp'n Br. to Colgate's Motion 4–5 (citing Exs. 1, 2 to Pl.'s Opp'n Br. to Colgate's Motion,[4] ECF No. 40-1 at *7–18).)[5]

---

[4] *Crain v. Cyprus Mines Corporation*, No. 19-438 (W.D. Okla. Aug. 22, 2019); (*Cyprus-Amax Minerals Co. v. Pipes*, No. 117,550 (Okla. Jan. 22, 2019).

[5] Even if venue would be appropriate in the Western District of Oklahoma, the Court finds the private interests in this case weigh strongly against transfer and that the public interests do not tip as heavily in favor of transfer.

10

Turning to the public factors, Defendants argue that the congestion in the District of New Jersey strongly favors transfer. The Court finds, however, there is significant local interest in deciding the immediate controversy. "New Jersey has an interest in adjudicating disputes involving products sold by its home-state businesses." *Collins*, 2014 WL 6474188, at *5. This is not a matter in which the parties have no ties to the forum. Here, a sizable number of Defendants are incorporated or have their principal place of business in New Jersey. Colgate does not dispute that it has substantial talcum-powder operations in New Jersey. (*See generally* Colgate Reply Br., ECF No. 47.) Coty does not dispute that its research and development facility is in New Jersey. (Coty Correspondence, ECF Nos. 31, 50.) On balance, New Jersey has an interest in the resolution of the matter and finds the public interest factors do not tip as heavily against transfer.

Because countervailing consideration do not warrant disturbing the paramount consideration of Plaintiff's choice of forum, and because Defendants fail to argue the transferee court would have personal jurisdiction over all defendants, the Court finds Defendants have not met their heavy burden to show that Oklahoma is an appropriate transferee forum and declines to transfer the matter to the Western District of Oklahoma.

## IV.  CONCLUSION

For the reasons set forth above, Cypress and CAMC's Motions to Dismiss are denied without prejudice. Defendants' Motion to Transfer Venue is denied.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

Here, as with other product liability actions filed in the district, the location of records and of witnesses does not tip the scale in either direction. *E.g.*, *Collins v. Novartis Pharm. Corp.*, No. 13-2363, 2014 WL 6474188, at *4 (D.N.J. Nov. 19, 2014); *Yocham*, 565 F. Supp. 2d at 559; *Workman v. Johnson & Johnson, Janssen, L.P.*, No. 06-2523, 2007 WL 1850907, at *3 (D.N.J. June 26, 2007) ("While the evidence in [the transferee court] may be relevant to some defenses, it is insufficient to support a transfer."). Although Plaintiff's medical records and fact witnesses are likely to be located in Oklahoma, documents pertaining to the development, testing, and marketing of the talc products are likely located in New Jersey. Furthermore, without evidence that necessary witnesses will be unwilling or otherwise unavailable to testify in New Jersey, the Court finds unavailing Defendants' arguments that they may be left without the benefits of convenient compulsory process. All considered, the Court finds the private interests weigh strongly against transferring the case at this time.